1   WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   Edward Paul Moss,                    )   CIV 15-2600-PHX-DGC (MHB)
                                         )
10              Petitioner,              )   **REPORT AND RECOMMENDATION**
                                         )
11  vs.                                  )
                                         )
12  Charles L. Ryan, et al.,             )
                                         )
13              Respondents.             )
                                         )
14  _____ )

15  TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT COURT:

16          Petitioner Edward Paul Moss has filed a *pro se* Petition for Writ of Habeas Corpus

17  pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents filed an Answer (Doc. 11), and

18  Petitioner has filed a reply (Doc. 12).[1]

19

20          [1]  Petitioner has filed a pleading entitled "motion to stay proceedings" (Doc. 10)
21  requesting that the Court "stay any further action in [this matter] pending a decision by the
    United States Court of Appeals in the appeal of this Court's decision in the matter of CV-[15-
22  ]02599-DGC-MHB." Petitioner simply states that the court of appeals may "make a contrary
    ruling on Petitioner's appeal than that of the District Court." In that case, the Court dismissed
23  the matter without prejudice finding:

24          Petitioner pleaded guilty to two counts of sexual assault. Each of Petitioner's
            claims for relief relate to an alleged deprivation of constitutional rights that
25          occurred prior to the entry of the guilty plea. Petitioner's guilty plea was a
            break in the chain of events that precluded any subsequent constitutional
26          challenge. Accordingly, the Court will dismiss the Petition and this action
            without prejudice.
27
28  Having reviewed Petitioner's pleading, the Court will recommend that Petitioner's "motion
    to stay proceedings" (Doc. 10) be denied.

1

### BACKGROUND[2]

2   The following facts are derived from the Arizona Court of Appeals' Memorandum

3   Decision. (Exh. D.)

> Before May 17, 2004, Moss had been living with Carla and her three children, Ebony, Aaron and Tyanna. Moss was Tyanna's biological father. On May 17, Carla had Moss served with an order of protection, and Moss left Carla's home that night.
>
> The next evening, however, Moss entered the home through a window while Carla and the children were sleeping. Moss put his knee on Carla's back, placed his hand over her mouth and said "bitch, I'm going to kill you." The children awoke, and Ebony attempted to pull Moss off her mother. Moss ordered Aaron to get a kitchen knife, held the knife to Carla's back and said that, if she moved, he would kill Ebony. He then held the knife to Ebony's neck and said that, if she moved, he would kill her mother.
>
> Someone knocked on the door. Moss forced Carla and the children to crawl to Ebony and Tyanna's bedroom, and he took Carla into her bedroom where he tied her hands and feet with tape, and put a sock in her mouth and covered it with tape. He also taped Ebony's hands, tied her feet with a shirt, put a sock in her mouth and made her lie in the bathtub on her stomach.
>
> Moss next took a coat hanger, heated it on the stove and used it to burn Carla's wrist and Ebony's wrist. He also threatened to use a razor on Ebony's neck and to make Carla, Ebony, Aaron and Tyanna drink antifreeze.
>
> During this ordeal, Moss put his hand in Ebony's pants and touched her genitalia, telling the girl that, "if you would just let me touch you then all of this stuff wouldn't happen to you and your mom." He also said, "I'm going to have sex with you."
>
> Moss eventually untied Carla and Ebony and fell asleep. Carla and the children escaped and called the police.
>
> Dr. Lisa Kirsch, a pediatrician at the Child Abuse Assessment Center, examined Ebony. She observed bruises on her back, abrasions on her neck, markings on her wrist and tape residue on her arms, face, hair and ear. A vaginal examination revealed an abrasion on Ebony's hymen, indicating recent vaginal penetration.
>
> Michelle Becker, a forensic interviewer, spoke with Ebony in May and in October 2004. During the second interview, Ebony told Becker that Moss had molested her once when she was nine years old and that he had twice attempted to molest her when she was ten years old.
>
> Detective Duane Armitage interviewed Carla and the children. He noted that Carla's and Ebony's accounts of Moss's actions were consistent, although they

---

[2] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 11 – Respondents' Answer.

differed about the order of events and about where each incident had occurred in the house. Armitage saw tape residue on both Carla's and Ebony's face, wrists and ears, and ordered that tape seized at the crime scene be analyzed for fingerprints. An examiner was unable to make a comparison of latent prints found on the tape with Moss's known prints, however.

At trial, Moss testified that he was afraid of Carla because she had once tried to poison him. He also testified that, the night after he had been served with the order of protection, he had been sleeping in his car when Carla had seen him and invited him to return to the house. He elaborated that they were crying and talking before he fell asleep and that, when he awoke the next morning, he was surprised to see police officers because "I knew it couldn't have been about the order of protection."

Moss was convicted and sentenced as follows: Count 1, aggravated assault of Carla, a class 6 felony, ten years' imprisonment; Count 2, kidnapping of Carla, a class 2 dangerous felony, 10.5 years' imprisonment; Count 3, kidnapping of Aaron, a minor, a class 2 dangerous felony and dangerous crime against a child, 17 years' imprisonment; Count 4, not guilty of kidnapping Tyanna but guilty of unlawful imprisonment, a class 6 felony, one year's imprisonment; Count 5, kidnapping of Ebony, a minor, a class 2 dangerous felony and dangerous crime against a child, 17 years' imprisonment; Counts 6 and 7, aggravated assaults of Ebony, a minor, with a razor and with a knife, class 2 dangerous felonies and dangerous crimes against a child, 17 years' imprisonment each; Count 8, sexual conduct with a minor, Ebony, a class 2 dangerous felony and dangerous crime against a child, life in prison; Count 9, molestation of a child, Ebony, a class 2 felony and dangerous crime against a child, 17 years' imprisonment; Count 10, attempted molestation of a child, Ebony, a class 3 dangerous felony and dangerous crime against a child, ten years' imprisonment; and Count 13, interfering with judicial proceedings, a class 1 misdemeanor, six months' imprisonment and six months' preincarceration credit. The sentences for Counts 1, 2, 4 and 10 were ordered to be concurrent; the sentences for the remaining counts were ordered to be consecutive.

(Exh. D at 4-7, ¶¶ 2-12.)

Petitioner filed a timely appeal with the Arizona Court of Appeals, raising four claims: (1) "The court's comments to the child witnesses revealed that she believed them, which violated Moss'[s] rights to due process and a jury trial[;]" (2) "The prosecutor's religious appeals to the jurors requires reversal[;]" (3) "The court failed to obtain a waiver of rights before permitting Moss to stipulate to an element of a crime. The interfering with judicial proceedings conviction must therefore be reversed[;]" and (4) "The judge erred in refusing to allow defense counsel to tell the jurors that the charges were serious, and that they were felonies." (Exh. A at 2; Exh. D at 7, ¶ 12 n.2.) The State filed an answering brief (Exh. B), and Petitioner filed a reply brief (Exh. C). The court of appeals ultimately rejected all four

claims in its memorandum decision issued on May 8, 2007, affirming his convictions and sentences. (Exh. D at 1, 15, ¶ 31.) Petitioner filed a petition for review with the Arizona Supreme Court, but it was summarily denied on August 17, 2007. (Id. at 1.)

On October 10, 2007, Petitioner filed a timely notice of post-conviction relief. (Exh. E.) The superior court appointed counsel, who, after reviewing the "relevant documents in the matter," avowed that he could not find any colorable claims for relief. (Exhs. F and G.) Petitioner subsequently filed a *pro se* petition, presenting three claims of ineffective assistance of trial counsel. (Exh. H.) Specifically, Petitioner claimed that his trial counsel had been ineffective for not: (1) calling an unidentified witness at trial regarding "statements made to her by the victim[;]" (2) subpoenaing another unidentified witness; and (3) objecting to the prosecutor's reading of a religious letter during trial. (Id.)

The State responded to Petitioner's petition (Exh. I), and, on January 2, 2009, the superior court filed its order dismissing Petitioner's post-conviction-relief proceeding (Exh. J). The superior court found that Petitioner failed to state a colorable claim for which relief could be granted. (Id.) Petitioner did not file a petition for review with the Arizona Court of Appeals. (Exh. K.)

On December 21, 2015, Petitioner filed the instant habeas petition. (Doc. 1.) Petitioner raises six grounds for relief.

(1) Petitioner's sentence was illegal and violates the "Apprendi Rule" because the trial court failed to present the sexual assault convictions for the jury to make a determination of fact;

(2) The "Double Jeopardy Clause" was violated because the four counts of kidnapping resulting from a single course of conduct;

(3) The indictment was "constructive[ly] amend[ed]" because Petitioner was not aware that he was ever indicted on the additional charges, and he was not arraigned and did not have a preliminary hearing on these charges;

(4) Petitioner's prior convictions were illegally alleged against Petitioner;

(5) Petitioner's sentence was imposed pursuant to unconstitutional statutes; and

(6) Petitioner was subjected to cruel and unusual punishment and the "Apprendi Rule" was violated when he was sentenced pursuant to Arizona's "Dangerous Crimes Against Children" statute for a single course of conduct.

**DISCUSSION**

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and must be dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th

Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition is not filed until later. See Isley v. Arizona Department of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). However, the time between a first and second application for post-conviction relief is not tolled because no application is "pending" during that period. See Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The petitioner was "not entitled to tolling during the interval between the completion of one round of state collateral review and the commencement of a second round of review."). Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

The statute of limitations under AEDPA is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 645-46 (2010). However, for equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" and prevented him from filing a timely petition. Id. at 648-49 (quoting Pace, 544 U.S. at 418).

The Court finds that Petitioner's Petition for Writ of Habeas Corpus is untimely. After trial and sentencing, Petitioner appealed his convictions and sentences to the Arizona Court of Appeals. The court of appeals affirmed Petitioner's convictions and sentences on May 8, 2007. Petitioner then filed a petition for review with the Arizona Supreme Court, which was summarily denied on August 17, 2007. Consequently, Petitioner's convictions became final 90 days later – November 15, 2007 – when the time expired for filing a petition for writ of certiorari in the United States Supreme Court. See 28 U.S.C. § 2244(d)(1)(A) (providing that AEDPA's limitations period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010) ("When, on direct appeal, review is sought

1   in the state's highest court but no petition for certiorari to the United States Supreme Court

2   is filed, direct review is considered to be final when the certiorari petition would have been

3   due, which is 90 days after the decision of the state's highest court.").

4   Petitioner, however, filed a notice of post-conviction relief on October 10, 2007,

5   before his convictions became final. Because Petitioner's notice of post-conviction relief was

6   properly filed, it started tolling AEDPA's 1-year statute of limitation before it started to run.

7   See 28 U.S.C. § 2244(d)(2); Isley v. Ariz. Dep't of Corrections, 383 F.3d 1054, 1055-56 (9th

8   Cir. 2004) (finding statutory tolling for Arizona cases begins on the date a notice for

9   post-conviction relief is filed). The post-conviction relief proceeding remained "pending,"

10  and continued tolling the 1-year limitations period, until January 2, 2009, when the superior

11  court filed its order dismissing the proceeding. Petitioner did not take any further action in

12  the proceeding; thus, the date the trial court denied the proceeding is the proper end-date for

13  purposes of statutory tolling. The limitations period, therefore, began running the next day,

14  January 3, 2009, and expired 1 year later, on January 4, 2010.[3] In sum, Petitioner filed his

15  habeas petition on December 21, 2015 – nearly 6 years too late. The habeas petition is

16  therefore untimely.

17  The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably

18  tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United

19  States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other

20  grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).

21  Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control

22  make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063,

23  1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under

24  AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When

25  external forces, rather than a petitioner's lack of diligence, account for the failure to file a

26  timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v.

27

28      [3] January 3, 2010 – the actual date – was a Sunday.

Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

There is nothing in the record suggesting that Petitioner pursued his rights diligently, or that an external force prevented him from timely filing a federal habeas petition. And, Petitioner makes no such claim. Instead, Petitioner argues the merits of his claims stating that he should be entitled to equitable tolling because "the issues raised make a substantial showing of the denial of a constitutional right on more than one occasion." The merits of Petitioner's claims, however, are irrelevant to the equitable tolling analysis. Moreover, Petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

Accordingly, Petitioner is not entitled to equitable tolling and his habeas petition is untimely.

## CONCLUSION

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that Petitioner's pleading entitled "motion to stay proceedings" (Doc. 10) be **DENIED**;

1    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

2  to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

3  justified by a plain procedural bar and jurists of reason would not find the procedural ruling

4  debatable.

5    This recommendation is not an order that is immediately appealable to the Ninth

6  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

7  Appellate Procedure, should not be filed until entry of the district court's judgment. The

8  parties shall have fourteen days from the date of service of a copy of this recommendation

9  within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);

10  Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen

11  days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of

12  Civil Procedure for the United States District Court for the District of Arizona, objections

13  to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure

14  timely to file objections to the Magistrate Judge's Report and Recommendation may result

15  in the acceptance of the Report and Recommendation by the district court without further

16  review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure

17  timely to file objections to any factual determinations of the Magistrate Judge will be

18  considered a waiver of a party's right to appellate review of the findings of fact in an order

19  or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72,

20  Federal Rules of Civil Procedure.

21    DATED this 13th day of April, 2016.

22

23

24    Michelle H. Burns
      United States Magistrate Judge

25

26

27

28